Welch, J.
The plaintiffs are shareholders in the First National Bank of Cincinnati, organized under the act of Congress of Juno 3, 1864. On the 2d day of May, 1865, their ^several shares in the bank were listed on the grand duplicate of Hamilton county, as-a part of their personal property, and assessed for taxation agreeably to the provisions of the state law, of April 2, 1865. 62 Ohio-X. 106. The assessment is upon the par value of the shares, and no deduction is made therefrom on account of the capital or funds of the bank invested in United States bonds, .which are not subject to state taxation, or in real estate, which is taxed against the bank itself. The case below was a petition filed by the plaintiffs against the defendants, to enjoin the collection of the tax thus assessed upon their shares, and to enjoin the assessment and collection of like-taxes in the future under said act of 1865. The court below were of the opinion that the tax was legally assessed, and dismissed the plaintiff’s petition, on demurrer thereto; and the case now comes here, on petition in ci-ror, for decision of the single question whether the court erred in that question.
The act of Congress authox-izing national banks provide that “ shares " in such banks may be assessed for state taxes, and taxed as the personal property of the owners thereof, subject to two limitations. The first limitation is, that the assessment shall not be at-a greater rate than that imposed upon “ other moneyed capital in the hands of individual citizens of the state.” The second is ;• “ That the tax so imposed under the laws of any state, upon the shares of any of the associations authorized by this act, shall not-exceed the rate imposed upon the shares in any of the banks organized under authority of the state where such association is located.” The act also provides that real estate owned by the banks, may be taxed as such, by state authority.
The plaintiffs allege that the tax sought to be enjoined is unauthorized by law, and is in violation of both these limitations; that» *562 "the moneyed capital of individuals residing in the state-is taxed at .a lower rate; that “ shares ” in the state banks are not taxed at all; .and that the banks themselves are taxed at a rate lower than is so .assessed upon the plaintiffs. They say that the state banks are taxed at a lower rate, because they are taxed upon their capital, with■out including the value of the franchise, or privilege of banking, '618] *and subject to a deduction for the value of real estate, and of ■untaxable bonds of the United States, owned by the banks.
At the time this tax was assessed, the banks of issue in this state consisted of the branch banks and the independent banks, organized under the act of February 24, 1845, and the free banks, organized under the act of April, 1851. The act of 1845 imposes on the ■state and independent banks a tax of six per cent, on their profits, in lieu of all other taxes. The act of April, 1861, imposes no re.strictions on the power of the legislature to tax the banks organized ■thereunder.
The state law of 1865, under which the assessment was made, requires all persons to list, with their other personal property, moneys, -credits, etc., “all shares in national banks located in this state.” 62 Ohio L. 106. At the date of this act, and at the time of the assessment • of the present tax under it, the other laws in force in Ohio were, the general act of 1859 (2 S. & C. 1438) ; the amendatory act of 1861 (58 Ohio L. 59) ; and the act of 1852 (59 Ohio L. 3).
By the act of 1859, all persons are required to list for taxation, .among other items of personal property, etc., “ all investments in 'stocks;’ ” but section 59 of the act provides, among other exemptions, that no person shall be required to include' in the list of his personal property, etc., “ any share or portion of the capital stock ■or property of any company or association, which is required to list ■or return its capital and property for taxation.”
The jnovisions of said act of 1861, for taxing the banks, organized under the act of 1845, are as follows :
“ Seo. 4. It shall be the duty of the president and cashier of ■ each banking company organized under the act entitled ‘ an act to incorporate the State Bank of Ohio and other banking companies,’ passed February 24, 1845, on or before the second day of May in each year, to make out, under oath,, and to return to the proper assessor of the township, town, or ward where such company is located, a certificate containing a statement of the amount of the cap-dial stock of such company paid in and remaining as capital stock un *563 diminished by loss or otherwise, together with the amount of surplus and contingent fund and undivided profits accrued prior to the ^first Monday in May, and also the amount loaned to or deposited with such bank for a term certain, or which by agreement •or understanding between the parties, is not to be withdrawn on •demand, excepting amounts which may-have been deposited with .any bank established as a clearing-house for the redemption of the notes of banks making such deposits, and on which no. interest is charged or received by the banks making such deposits; and the amount so returned shall be placed on the county duplicate, and on the city duplicate where city taxes are collected on a separate ■duplicate, and taxed as other personal property in the same township, town, village, or ward may be taxed by law. In making the certificate aforesaid, any portion of said stock, surplus, or contingent fund, or undivided profits invested in real estate, which is subject to taxation under the laws of this state, may be deducted; but the certificate shall •specify the amount so deducted.”
By the act of January 16,1862, all banks of issue in the states were authorized temporarily to suspend specie payments, and were relieved from penalties provided in their charters against such suspension, upon condition that they should, respectively, consent to be taxed under said act of 1861. And all the banks organized under said act of 1845 gave their consent accordingly, within the time specified.
Under this state of legislation, was the tax levied upon these shares authorized by law?
Whether the state has inherent power, without any authority from Congress, to impose an equitable and just tax upon shares or capital in banks organized under the revenue laws of the federal government, and whether the power, if it exists, is unlimited, unless restrained by Congress, need not be made questions in the case. The power and the limitation are both supplied in the act of Congress referred to. Nor can the constitutional right of Congress to grant the power, be impugned ’ on the ground that it impairs the validity of the contract of the government, exempting the bonds upon which the circulation of the banks is based, from taxation. Congress had the right to impose this condition as a royalty annexed to the grant of corporate power, and the corporators, by acceptance of the grant, have. assented to the con *564 dition. *The state, therefore, had power to tax these shares,, according to the provisions of said act of Congress.
It is, perhaps, now conceded—although the contrary was originally argued in the case—that the word “shares,” used in the act of Congress in reference to the national banks, was intended to be understood in the sense of choses, and not as aliquot parts of the capital stock of the association. It was used to designate the separate and individual property of the owners, and not their interest in the common property of the bank. The intention was, to subject these shares to taxation, as such property of the owner, at their full value, without any deduction on account of the franchise, or for investments of the capital or funds of the bank in untaxable bonds, or in real estate. That such is the true construction of the act is now well settled by the case of Duer v. The Commissioners, decided by the Supreme Court of the United States at its present term, and in Van Allen v. The Assessors, 3 Wallace, 573. It is not claimed that the plaintiffs are taxed beyond the value of their-“shares” in this sense. They are taxed upon the par value of the shares, and there is nothing in the case to show that their-real value is any less than par. The tax, then, is authorized and legal, unless it is in violation of the limitations imposed by the act of Congress, by exceeding the rate imposed upon “moneyed capital” in the hands of individuals, or that imposed upon “shares-'in state banks.”
As to the first of these limitations there can be no question. If the shares are to be regarded as choses, and assessed at their full-value, then there can be no violation of the first limitation, unless they are subjected to a higher percentage of taxation than other-property or capital, at the place where the bank is located, which is not pretended in the case.
It remains to inquire, whether the tax exceeds the rate imposed upon the “ shares in the banks authorized by the state.” This is-the principal question in the case, and it has been elaborately and ably argued.
It must be premised, that in the cases referred to, the Supreme-Court of the United States have put a more liberal construction upon the word “shares” as here used, in favor of the power to tax, than they have upon the same word when ^designating; shares in the national banks. That court holds, that the equivalent taxation necessary to justify a tax upon the shares in national *565 banks, may be either upon the shares of the individual stockholders in the state banks, and assessed against the stockholders, or it may be upon the capital of the bank, and assessed against the bank itself; provided only that it be a frill equivalent. The tax against the owners of shares in the national banks must not exceed that imposed, in some form, upon the state banks or their stockholders. The question is, whether there is such equivalent in either form, in •the present case? In other words: Does the act of April, 1861, properly construed with reference to provisions in our constitution on the subject, tax the shares in the state banks, and as the choses «or property of the shareholders; or, if not, then does it tax the banks ¡themselves, upon an amount equal to the value of such shares without deduction? We are unanimous in the opinion that both these questions must be answered in the negative.
The counsel of the defendants contend, in the first place, that there is such equivalent tax imposed upon the banks themselves.
It is true, as counsel say, that the act of 1861 may be regarded •as a contract with the banks organized under the act of 1845, and that the legislature had full power, as against the banks organized under the act of 1851, to impose an equivalent tax. But it matters not whether we regard the act as a contract, or as a law, or what may have been the power of the legislature, the question in either case is the same. What is its true construction ? Does it impose on the banks of the state a tax equivalent to that imposed upon the shares in national banks ?
There are three alleged elements of inequality—the franchise, •the real, estate, and the (investment in United States bonds. Possibly we may rid the case of the first, by holding that the act of 1865 only required shares in the national banks to be taxed at •their par or nominal value, as they were in fact taxed in this case, and not at their actual or market value, and, therefore, the value -of the franchise is to be excluded.
As to the second element of inequality there can be no controversy. The shares in the national banks are assessed at *their value—either nominal or real—without any deduction for real ■estate, which is taxed separately against the bank, as real estate; ■whereas, by express provision in the act of 1861, the value of real ■estate owned by the state banks is to be deducted from their capital.
But the most important element of difference is the investment in United States bonds. The act of 1865, admittedly, allows no *566 deduction for bonds owned by the national banks, from the valuation of shares to be taxed. Does the act of 1861 allow such deduction from the capital of the state banks ? However we might be disposed to decide this as an original question, we look upon it. as having been settled by decisions of the Supreme Court of the-United States, and we feel bound by those decisions. In the case-of Van Allen v. The Assessors, and also in The Bank Tax-Case, in 2 Wallace, 200, a tax law of New York, of 1857, of similar import, was held to admit of such deduction, and a tax levied under it upon the capital'of the New York state banks, without deduction-for such bonds, was declared by that court to be unauthorized and illegal. In New York, as in Ohio, the general ad valorem system of taxation is adopted. In both states taxes are assessed upon-valuations. The New York statute of 1857 subjected the banks of that state to taxed upon a valuation “ equal to the amount of their capital stock paid in or secured to be paid in, and their surplus earnings,” etc. The valuation upon which our state and independent banks are to be taxed, by the law of 1861, is to consist of “ the' amount of the capital stock of such companies paid in and remaining• as capital stock undiminished by losses or otherwise, together with the amount of surplus,” etc. The two statutes are substantially the-same; and were we to put a different construction upon ours, it would only be necessary to take the case to the Supreme Court of' the United States in order to have the decision reversed.
But it is contended, in the second place, that the act of 1861 imposes a tax upon shares in the state banks, as well as upon the capital of the banks. There is no pretense that the act expressly taxes-shares in the state banks. On the contrary, it is admitted that by~ the 59th section of that act they are expressly exempted. The argument is, that the exemption is ^unconstitutional, and must, therefore be rejected ; that the true meaning of the constitution is, that money employed in banking, by associations who divide their-capital stock into shares, shall be subjected to a species of double taxation ; that it shall be taxed once against the bank as its capital, and a. seeondtime against the shareholders as stock in the bank. We are not ■called upon to decide this constitutional question. For the present, case it is enough to say, that the constitution docs not, on such matters, execute itself.- It does not levy takes, but merely prescribes the character of laws to be enacted for that purpose1 by the-legislature. Until the laws are passed, the taxes can not be levied-, *567 The act of 1861 is not a law imposing snch double taxation, and!, can not, upon any admissible principle, be amended by judicial interpretation into such a law. It provides for a tax against certain, corporations and companies upon their capital, and for a tax against: the shareholders, upon their stock, in those corporations and companies that are not so taxed upon their capital. No form of words,, or arrangement of sections and sentences in the act, can enable the court, by mere construction, so to amend it as to bring in a new class of tax-payers; that is to say, stockholders in corporations and companies that are taxed, as such, upon their capital. The’ meaning of the act is plain, and to alter it in the respect indicated, would be to legislate. The intention manifestly was to subject the-capital employed by these corporations and associations to a single taxation—some of them in one form, and some in another—and not. to tax any of them twice. It is the unmistakable intention manifested in our tax legislation for the last twenty years—the central idea of our system of general ad valorem taxation—to tax every person upon what he is worth. In a system like ours, where intangible as well as tangible property is taxed, some forms of double taxation are unavoidable; but the object should be—and such seems to have been the general aim of all our late legislation upon the subject— to avoid double taxation wherever it is practicable, and, as nearly as may be, to tax all according to their actual wealth. That object is best attained in case of a corporation, or joint stock company, by taxing the stockholders—the persons who own its ^property, upon the full value of their shares therein, including, of course, their interest in the franchise or privilege, and in all tangible property owned by the company; and by taxing the corporation also upon the value of such tangible property. The stockholders are thus taxed—as all other individuals who own tangible and intangible property are sometimes unavoidably taxed—once upon all he is ivorth, and a second time upon that part of his property which is tangible. This is the rule adopted by the act of Congress in question, and it seems to us to be a just and fair rule. The act of 1865, by subjecting shareholders in the national banks to such a tax, places upon the owners of those banks, the shareholders therein, no more than their just proportion of the public burden of taxation; and we regret that any technical reasons, growing out of the taxation of the few remaining state banks, should stand in the way of its enforcement. We are glad, however, to say that no such im *568 pediments to just and equal legislation on the subject will exist in the future. The banks organized under the act of 1845, now only exist for the purpose of closing up their affairs, and arc no longer “banks” within the meaning of the act of Congress; and the banks organized under the act of April, 1851, are liable to be taxed under the constitution of 1851, subject to no limitation in their charters. It is, perhaps, unnecessary to say, that the word “ banks ” in the act of Congress means incorporated banks, and that the limitation does not, therefore, apply to private bankers.
We are of opinion that the court erred in sustaining the demurrer to plaintiffs’ petition, and its judgment will, therefore, be reversed, and the cause remanded for further proceedings.
It by no means follows, however, that the plaintiffs are entitled to an unconditional injunction against the collection of the tax. They ask equity, and must do equity. They invoke the exercise of an extraordinary power of the court for their relief, and the court in its discretion should refuse that relief, except upon conditions that are equitable and just. We think, therefore, that the injunction should only be granted upon the condition that the plaintiffs, or their bank, *shall first pay to the treasurer of Hamilton county, a sum that will be a pro rata equivalent for the tax imposed upon the state and independent banks, under the act ■of 1861, that is to say, such sum as might lawfully have been assessed upon the plaintiffs, or their bank, under said act, had it been •one of said state banks. If the parties can not agree upon this sum, proceedings can be adopted to ascertain it by the court; and, if found necessary, the bank itself can be made a party.
Scott, C. J., and White, and Brinkerhoee, JJ., concurred.
Day, J., did not sit in the case.